UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| APE GROUP SPA, ROMANO CONSULTING SPA, ICARO SRL and ELAZAR ROMANO,<br><br>Plaintiffs,<br><br>v.<br><br>THE REPUBLIC OF ARGENTINA,<br><br>Defendant. | No. 20 Civ. 10409<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiffs Ape Group SpA, Romano Consulting SpA, Icaro SRL and Elazar Romano (collectively, "Plaintiffs"), by their undersigned counsel, for their Complaint state the following:

## NATURE OF THE ACTION

1. This is an action for breach of contract or, in the alternative, breach of the covenant of good faith and fair dealing, brought to recover unpaid amounts due on securities issued by defendant the Republic of Argentina (**"Argentina"**). The securities are the 2005-issued U.S. Dollar-Denominated New York law GDP-Linked Securities (ISIN: US040114GM64) (the "GDP Warrants").

## THE PARTIES

2. Plaintiffs are natural persons and juridical entities of Italian nationality, residing or located in Italy

3. Defendant Argentina is a foreign state as defined by 28 U.S.C. §1603 (a).

## JURISDICTION AND VENUE

4. This Court has Jurisdiction over the subject matter of this lawsuit pursuant to 28 U.S.C. §1330.

5. Venue is proper in this District by agreement of the parties and pursuant to 28 U.S.C. §1391(f).

## FACTUAL ALLEGATIONS

6. Plaintiff Elazar Romano ("Romano") previously held bonds issued by Argentina on which Argentina had defaulted. In 2005, Argentina offered bondholders new securities in exchange for the bonds on which it had defaulted. The new securities would consist both of new bonds and of securities whose payments would be linked to growth in Argentina's Gross Domestic Product. Romano accepted this offer.

7. Romano determined that he might be interested in purchasing additional GDP linked securities, so he read a prospectus issued by Argentina dated January 10, 2005 (the "Prospectus") which was available on the website of the Luxembourg Stock Exchange.

8. Based upon the information in the Prospectus, Romano decided to purchase GDP-linked securities (ISIN US040114GM64) (the "GDP Warrants" or the "Warrants") Romano purchased GDP Warrants for himself, and caused the remaining Plaintiffs to purchase GDP Warrants, in the following face amounts:

Elazar Romano: $82,000,000

Ape Group SPA: $18,000,000

Romano Consulting SPA: $21,000,000

Icaro SRL: $5,000,000

9. The Prospectus stated that Argentina would make payment on the GDP Warrants based on the growth in Argentina's GDP. An excerpt from the Prospectus setting forth the payment terms with respect to the GDP Warrants is attached hereto as Exhibit A.

10. Under the terms of the Prospectus, Argentina promised to pay a Payment Amount[1] subject to three conditions: (i) Actual Real GDP exceeds Base Case GDP for the reference year (the **first condition**); (ii) Actual Real GDP growth exceeds Base Case GDP growth for the reference year (the **second condition**); and (iii) the aggregate payments to date under the GDP Warrants and the Payment Amount do not exceed the Payment Cap (the **third condition**).

11. The calculation of the Payment Amount and determination of the conditions set forth in the Prospectus are based on GDP data, and the Republic has a contractual obligation to publish that data through the Instituto Nacional de Estadística y Censos ("INDEC"). INDEC is a part of the Republic's Ministry of Economy and subject to direct oversight by the President, who may issue instructions and orders to INDEC and even overrule INDEC's decisions. Under Argentine law, INDEC does not have a legal identity separate from that of the Republic. In particular, Argentina has an obligation to publish (through INDEC) **Actual Real GDP**, which under the Prospectus is "the gross domestic product of Argentina in constant pesos for each calendar year as published by the Instituto Nacional de Estadística y Censos ("INDEC")" Because INDEC is part of the Republic, the Republic has the power to compel INDEC to publish this data. Thus, the Republic is obligated to ensure that INDEC does so. Indeed, absent that obligation, the contractual terms would be nonsensical because there would be contractual formulas for payment amounts and conditions for payment but no assurance that

---

[1] Capitalized terms are used in accordance with the meanings set forth in Exhibit A.

the inputs for such formulas would ever be available. Moreover, if Argentina has no obligation to publish Actual Real GDP, and the absence of that data means Warrant holders have no entitlement to payment, then the Warrants would be valueless.

12. For each reference year, calculations to determine whether a payment is due are required to be made on the **calculation date**, defined in the Prospectus as "November 1 of each year following the relevant reference year, commencing on November 1, 2006"; and payment is required to be made on the **Payment Date**, defined in the Prospectus as "December 15 of each year following the relevant reference year." Calculations are to be based upon data published as of the calculation date, not data that may be published thereafter. For reference year 2013, the calculation date was November 1, 2014 and the Payment Date was December 15, 2014, and all calculations with respect to reference year 2013 were required to have been performed by November 1, 2014 based upon data published as of that date.

**Rebasing Adjustments Required by the Prospectus**

13. Generally speaking, GDP is a measure of the goods and services produced in an economy. Nominal GDP measures the quantity of goods and services based upon current prices, which may increase or decrease over time. Real GDP, by contrast, measures the quantity of goods and services assuming prices remain constant over time, thereby controlling for the effects of inflation and deflation.

14. When INDEC measures Actual Real GDP, it applies the "Base Case GDP" from a base year, or what the Prospectus refers to as the "year of base prices." The Prospectus initially set the year of base prices at 1993, but provided that INDEC could choose to employ a different year of base prices. Specifically, the Prospectus provides that "Actual Real GDP is currently calculated by INDEC using the year 1993 as the year of base prices. If in any

year, the year of base prices for calculating Actual Real GDP is changed by INDEC, the Base Case GDP will be adjusted accordingly." Setting the initial year of base prices at 1993 made sense because INDEC was using 1993 prices to publish Actual Real GDP when the GDP Warrants were issued. Likewise, the Prospectus used 1993 prices to set the initial values for Base Case GDP, which (as explained below) is the baseline for calculating the Payment Amount and determining if the conditions for payment have been met.

15. However, changing the year of base prices affects the calculation of Actual Real GDP and Actual Real GDP growth. Rebasing may, for example, cause Actual Real GDP for a given year to be a larger or smaller figure than the figure reported in the old year of base prices (although usually larger since prices tend to rise over time), and may cause Actual Real GDP growth also to be a larger or smaller figure, even though changing the year of base prices does not change the quantity of good and services produced in the Argentine economy.

16. The Payment Amount and the conditions for payment depend upon whether and the extent to which Actual Real GDP and Actual Real GDP growth exceed Base Case GDP and Base Case GDP growth, respectively. Because changing the year of base prices affects the measurement of Actual Real GDP and Actual Real GDP growth, changing the year of base prices could significantly affect the calculation of the Payment Amount and whether the payment conditions have been met—unless there is an adjustment to Base Case GDP that accounts for the change in the year of base prices. Without such an adjustment, Argentina could potentially deprive Warrant holders of their rights to payment for a given year by simply rebasing.

17. The Prospectus provisions for adjusting Base Case GDP ensure that the rights of holders to receive payments, and the obligations of Argentina to make payments, are

substantially the same after a rebasing as before. In the absence of the adjustment, Actual Real GDP and Actual Real GDP growth would be measured in prices of the new year of base prices, while Base Case GDP and Base Case GDP growth would be measured in 1993 prices. With the adjustment, the comparison between Actual Real GDP and Base Case GDP, and between Actual Real GDP growth and Base Case GDP growth, remains "apples to apples" as it was when the GDP Warrants were initially issued and the year of base prices was 1993.

18. The adjustment provision is found in the definition of **Base Case GDP**. The definition of Base Case GDP contains a chart setting forth the initial Base Case GDP values measured in constant 1993 prices. It starts with reference year 2005.

19. In addition, the definition of Actual Real GDP provides as follows:

> Actual Real GDP is currently calculated by INDEC using the year 1993 as the year of base prices. If in any year, the year of base prices for calculating Actual Real GDP is changed by INDEC, the Base Case GDP will be adjusted accordingly. For example, if Actual Real GDP for 2006 with 1993 prices is X, and with 2000 prices is Y, then the Base Case GDP = Base Case GDP as per chart above multiplied by a fraction, the numerator of which is Y and the denominator of which is X.

Thus, if a change in the year of base prices occurs, then (for any calculation date thereafter) the Base Case GDP for any given reference year will be adjusted by a ratio of two different measures of Actual Real GDP for that reference year—using prices from the revised year of base prices for the numerator, and using prices from the original year of base prices (1993) for the denominator. If, for example, the change in the year of base prices caused Actual Real GDP for a given year to be 50% higher than it would have been using 1993 prices, Base Case GDP for that year would be adjusted upward by 50%. The adjustment fraction is calculated separately for each reference year.

20. Just as the Prospectus requires that Argentina (through INDEC) publish Actual Real GDP employing the new year of base prices for each reference year, it also requires

that after a rebasing Argentina (through INDEC) continue to publish Actual Real GDP in 1993 prices for each reference year because that figure is the denominator input for the adjustment fraction. Again, INDEC is a part of the Ministry of Economy of the Republic and subject to direct oversight by the President, who may issue instructions and orders to INDEC and overrule INDEC's decisions. The Republic has the power to compel INDEC to publish Actual Real GDP in 1993 prices, and the contract obligates the Republic to ensure that INDEC does so, so that after a rebasing such data would be available to calculate the adjustment fraction.

21. In 2013, as it was becoming apparent that Argentina would owe a payment under the GDP Warrants with respect to reference year 2013, the Republic announced that it was changing the year of base prices from 1993 to 2004. Because as of the calculation date for reference year 2013—November 1, 2014—INDEC was employing 2004 instead of 1993 as the year of base prices, the Prospectus required that Argentina (through INDEC) publish Actual Real GDP in the new year of base prices (2004) and in the original year of base prices (1993) so that the adjustment fraction in the definition of Base Case GDP could be calculated and applied.

22. As explained below, Base Case GDP for both 2012 and 2013 are part of the calculations under the GDP Warrants for reference year 2013, so the adjustment fraction for each year needed to be separately calculated. To do so, Argentina (through INDEC) was obligated to publish Actual Real GDP in both 2004 and 1993 prices for both years. INDEC published Actual Real GDP in 2004 prices for 2012 and 2013, and Actual Real GDP in 1993 prices for 2012, but it did not publish Actual Real GDP in 1993 prices for 2013. That Argentina may have decided to rebase does not relieve it of its obligation to continue to publish Actual Real GDP in 1993 prices. The Prospectus expressly anticipates and thus promises that such data will be available after a rebasing for each reference year. Argentina's decision to not publish Actual

Real GDP in 1993 prices for the full-year 2013 was willful and in bad faith. Had Argentina done so, it would have been clear that a payment was due under the GDP Warrants. Argentina withheld the full-year 2013 figure in an attempt to hide the fact that a payment was due and to frustrate Warrant holders' ability to calculate the adjustment fraction set forth in the Prospectus, and thereby show that the second (growth) condition to Argentina's payment obligation had been satisfied. Argentina apparently believed that if it withheld the data to calculate the adjustment fraction, it could avoid having to comply with the express rebasing adjustment terms found in the definition of Base Case GDP, and unilaterally modify the definition of Base Case GDP Growth to its advantage.

23. But Argentina's failure to publish does not allow it to ignore the express rebasing provisions or permit it to re-write the terms of the contract to address an absence of data for which it is solely responsible. It does, however, relieve Plaintiffs of any obligation to establish their entitlement to the benefit of the contract, including payment, by relying on figures that Argentina (through INDEC) was obligated, but failed, to publish.

24. Using other data published by INDEC as of the calculation date, the Court can derive what the full-year 2013 figure for Actual Real GDP in 1993 prices would have been had Argentina published the figure. INDEC published Actual Real GDP in 1993 prices for the first three quarters of 2013. It also published an index of economic activity based upon 1993 prices (the "EMAE Index") for the full year 2013, which took into account the Actual Real GDP data measured in 1993 prices published for the first three quarters, used information and methodology used to calculate Actual Real GDP measured in 1993 prices,[2] and exactly tracked

---

[2] According to INDEC, when it prepares the EMAE Index, it "tr[ies] to replicate, the extent possible, the use of the sources of information and the calculation methods of the quarterly and/or annual GDP."

Actual Real GDP measured in 1993 prices. Thus, based upon data INDEC published as of the calculation date, the full-year Actual Real GDP for reference year 2013 measured in 1993 prices that INDEC should have published can be determined.[3]

25. The adjustment fraction for reference year 2012 is Actual Real GDP for 2012 in 2004 prices (ARS 844.8 billion)[4] divided by Actual Real GDP for 2012 in 1993 prices (ARS 468.3 billion), or 1.80. Actual Real GDP for 2012 in both 1993 prices and 2004 prices was published by INDEC. Multiplying the adjustment fraction for 2012 by the Base Case GDP for 2012 from the chart in the Prospectus (ARS 361.1 billion) produces an adjusted Base Case GDP figure for 2012 of ARS 651.5 billion.

26. The adjustment fraction for reference year 2013 is Actual Real GDP for 2013 in 2004 prices (ARS 869.5 billion) divided by Actual Real GDP for 2013 in 1993 prices (ARS 491.3 billion), or 1.77. The figure for Actual Real GDP for 2013 in 1993 prices is derived using the EMAE Index data published by INDEC as of the calculation date for 2013; the figure for Actual Real GDP for 2013 in 2004 prices was published by INDEC. Multiplying the adjustment fraction for 2013 by the Base Case GDP for 2013 from the chart in the Prospectus (ARS 372.8 billion) produces an adjusted Base Case GDP figure for 2013 of ARS 659.7 billion.

---

[3] Since the full-year EMAE Index based on constant 1993 prices was 4.914% greater in 2013 than 2012, then full-year Actual Real GDP measured in constant 1993 prices was necessarily 4.914% greater in 2013 than 2012. Since 2012 Actual Real GDP in 1993 prices was ARS 468.3 billion, 2013
Actual Real GDP in 1993 prices was ARS 468.3 billion multiplied by 1.04914, or ARS 491.3 billion. (Exhibit E, Row 5.) Alternatively, using Actual Real GDP for the first three quarters of 2013 as published by INDEC and using the EMAE Index to estimate the fourth quarter produces the same full year figure for 2013.

[4] After November 15, 2014, INDEC published revised data for Actual Real GDP measured in constant 2004 prices. Such revised data would not have been available as of the calculation date for reference year 2013, and thus would not have been used to determine the Payment Amount for reference year 2013.

27. With the adjusted Base Case GDP figures for 2012 and 2013, the Payment Amount and conditions for payment for reference year 2013 that should have been calculated if Argentina had followed the terms of the contract and published the required data can be determined. Using these calculations, it can be determined that all conditions for payment would have been satisfied for reference year 2013 if Argentina had followed the terms of the contract and published the required data

28. Nonetheless, Argentina failed to make any payment with respect to reference year 2013. This has resulted in the GDP Warrants losing virtually all of their value.

29. The decision not to publish Actual Real GDP for 2013 in 1993 prices was arbitrary, willful and in bad faith. Well aware that the Argentine economy would meet the conditions for a payment for reference year 2013, Argentina sought to hide that fact and stymie Warrant holders' ability to assert their rights to payment. By inappropriately using the rebasing as an excuse to stop publishing Actual Real GDP in 1993 prices, and in particular the figure for 2013, Argentina attempted to destroy or injure the rights of Plaintiffs and other Warrant holders to receive the fruits of the contract.

### **Claim for Relief**
(Breach of Contract, including in the alternative,
Breach of the Covenant of Good Faith and Fair Dealing)

30. Plaintiffs repeat and re-allege the foregoing allegations.

31. Argentina breached the contract in at least three ways: First, Argentina failed to pay Warrant holders in respect of reference year 2013. Second, Argentina failed to follow the contractually mandated provisions to adjust Base Case GDP after the rebasing. Third, Argentina failed to publish 2013 Actual Real GDP in 1993 prices prior to the calculation date for reference year 2013. Plaintiffs are therefore entitled to the relief requested herein.

32. As explained above, the contract requires that when a rebasing has occurred, Base Case GDP for the relevant years must be adjusted as specified in the definition of Base Case GDP; and the contract further requires that the adjusted Base Case GDP figures for the years in question must be used in the calculation of Base Case GDP Growth. Argentina did not apply the adjustment fraction to Base Case GDP, and did not use adjusted Base Case GDP to calculate Base Case GDP Growth. Argentina's failure to follow the express terms of the contract, and its assertion that no payment was due for reference year 2013 based upon its incorrect interpretation of the contract, breached the contract and entitlex Plaintiffs to the relief requested herein.

33. In addition, as explained above, Argentina decided not to publish (through INDEC) Actual Real GDP for 2013 in 1993 prices, an input for the rebasing adjustment fraction required by the express terms of the definition of Base Case GDP. Because Argentina failed to publish this figure, Plaintiffs are relieved of any obligation to rely upon the missing data to establish their rights under the Warrant, and are entitled to rely upon other data published by INDEC as of the calculation date for reference year 2013 to establish their right to payment.

34. Argentina's failure to publish the missing data not only relieves Plaintiffs of any obligation to rely upon the missing data, it is itself a breach of contract. The contract called for the publication of this data by INDEC; INDEC is part of and under the control of the Republic and the Republic could have caused INDEC to publish this figure. Thus, the contract required Argentina to ensure the publication of this data.

35. In the alternative, if the terms of the contract as written do not require that Argentina (through INDEC) publish Actual Real GDP for reference year 2013 in 1993 prices, then Argentina had an obligation under the implied covenant of good faith and fair dealing to

cause INDEC to publish this data. The data was called for by the terms of the contract, and reasonable persons in the position of Warrant holders would be justified in understanding that the Republic was promising to ensure that INDEC published the data because INDEC was part of the Ministry of Economy and under the control of the Republic. Reasonable persons in the position of Warrant holders would also be justified in understanding that the Republic was promising to cause INDEC to publish Actual Real GDP in 1993 prices notwithstanding a change in the year of base prices because otherwise the contract would not have been written with a rebasing adjustment that called for such data.

36. Argentina acted in bad faith by failing to ensure that INDEC published Actual Real GDP for reference year 2013 in 1993 prices. INDEC published Actual Real GDP in 1993 prices for the first three quarters of 2013, and published full year economic activity data for 2013 that was based on the same data and methodology used to publish Actual Real GDP in 1993 prices. The Republic knew based upon this data that Argentina would meet the conditions for a payment for reference year 2013, and that if INDEC published Actual Real GDP for full-year 2013 in 1993 prices it would be obvious that a payment was due. Argentina caused and/or permitted INDEC to withhold this data in order to try to obscure the fact that a payment was due, and to attempt to stymie Warrant holders' ability to assert their rights to payment—and so that it could advance the fallacious assertion that because the data is supposedly missing, the Republic can ignore the plain language of the contract and unilaterally change its terms. If Warrant holders are required to present the missing data to establish their right to payment for 2013, then the Republic's failure to ensure that INDEC published the data would have the effect of destroying and injuring Plaintiffs' right to receive the fruits of the contract.

37. In sum, Argentina breached its contractual obligations by failing to apply the adjustment fraction to Base Case GDP when calculating Base Case GDP Growth and determining the second condition for payment; by failing to fulfill its obligations under the language of the contract or the implied covenant of good faith and fair dealing to publish Actual Real GDP for 2013 in 1993 prices; and by withholding the Payment Amount due for reference year 2013. Under the terms of the Prospectus, defendant Argentina was contractually obligated to make a Payment Amount of $0.07680 per $1.00 of notional amount of GDP Warrants on December 15, 2014. As a result of Argentina's breaches, Plaintiffs are owed Payments Amounts totaling in excess of $9 million plus pre- and post-judgment interest.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs request that there be an entry of judgment against Argentina as follows:

A. Awarding Plaintiffs the Payment Amounts due to them.

B. Awarding Plaintiffs the costs and expenses of this action, pre-judgment interest, and such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury in this action of all issues so triable.

Dated: New York, New York
December 10, 2020

LAW OFFICES OF ERIC J. GRANNIS

By: *Eric Grannis*
Eric J. Grannis (EG 8403)
11 Broadway, Ste. 615
New York, New York 10004
(212) 903-1025

Attorneys for Plaintiffs