UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

APE GROUP SPA, ROMANO
CONSULTING SPA, ICARO SRL, AND
ELAZAR ROMANO,

               Plaintiff,

-against-

THE REPUBLIC OF ARGENTINA,

               Defendant.

No. 20-CV-10409 (LAP)

ORDER

LORETTA A. PRESKA, Senior United States District Judge:

    Before the Court is Defendant The Republic of Argentina's (the "Republic's") motion to dismiss the Complaint brought by Plaintiffs Ape Group SPA, Romano Consulting SPA, Icaro SRL, and Elazar Romano (collectively, "Plaintiffs").[1]  Plaintiffs, who are holders of GDP-linked securities issued by the Republic, principally claim that the Republic breached the securities agreement for the GDP-linked securities when it failed to pay plaintiffs for amounts that became due in December 2014 in respect of reference year 2013.  Similar claims alleging breach of contract against the Republic with respect to these or similar GDP-linked securities have been alleged by other entities and are also pending before this Court.  See generally

---

[1] The Republic moved to dismiss on May 19, 2021.  (Dkt. Nos. 15-17.)  Plaintiffs opposed on July 19, 2021 (dkt. nos. 24-27), and the Republic replied on August 18, 2021 (dkt. no. 28).  The parties exchanged supplemental letter briefs on August 24 and 27, 2021.  (Dkt. Nos. 29-30.)

1

Aurelius Cap. Master, Ltd. v. Republic of Argentina, 2021 WL 1177465 (S.D.N.Y. Mar. 29, 2021).

According to Plaintiffs, the payment they seek in this lawsuit became due--and thus the claim accrued--on December 15, 2014.  (Complaint [dkt. no. 1] ¶¶ 12, 37.)  The Complaint was filed on December 10, 2020, just within the six-year statute of limitations that generally applies to breach of contract actions under New York law.  See N.Y. C.P.L.R. § 213.  But "parties to a contract may . . . agree on a shorter limitations period pursuant to [N.Y. C.P.L.R.] § 201."  Blake v. Prudential Ins. Co. of Am., No. 14-cv-7042 (RJS), 2016 WL 1301183, at *3 (S.D.N.Y. Mar. 31, 2016).  And Section 14 of Exhibit D.6 to the securities agreement,[2] entitled "Prescription," provides that "[a]ll claims against the Republic for any amounts due hereunder . . . shall be prescribed unless made within five years from the date on which such payment first became due, or a shorter period if provided by law."  (Exhibit 1 to the Declaration of Thomas C. White in Support of the Republic's Motion to Dismiss ("Security Agreement") [dkt. no. 17-1] at R-14 (emphasis added).)  The Republic claims that the prescription clause required Plaintiffs

---

[2]    As Plaintiffs point out in their brief, this prescription clause is "buried in Exhibit D.6. to a 425-page document." (Opposition to Motion to Dismiss [dkt. no. 24] at 5.)  While true, Plaintiffs do not dispute that the provision is part of the complicated securities instrument that they agreed to. Plaintiffs are bound by the agreement's terms.

2

to file suit within five years of the accrual of their claim and, thus, that the claim is time-barred.  Plaintiffs counter that the clause merely required them to give notice of their claim within five years of the accrual and that they did so.

The issue before this Court is thus straightforward:  Does the prescription clause represent an agreement by the parties to supersede the otherwise-applicable six-year statute of limitations such that Plaintiffs' claims are time-barred or is the prescription clause a mere notice provision?  And if it is the latter, did Plaintiffs in fact give notice of the claim?

Although a contract need not use any particular "magic words" to shorten a statute of limitations, Newmont Mining Corp. v. AngloGold Ashanti Ltd., 344 F. Supp. 3d 724, 749 (S.D.N.Y. 2018), such stipulations "are not looked upon with favor" and "should be construed with strictness against the party invoking them," Hauer Constr. Co. v. City of New York, 85 N.Y.S.2d 42, 44 (N.Y. App. Term 1948), aff'd, 93 N.Y.S.2d 915 (1st Dep't 1949); accord Lavin v. Briefly Stated, Inc., No. 09-cv-8610 (CM)(FM), 2011 WL 1334845, at *6 (S.D.N.Y. Mar. 31, 2011) (noting that such provisions should be "viewed with caution").  Thus, to be enforceable, the parties' intent must be "clear and unambiguous," Batales v. Friedman, 41 N.Y.S.3d 275, 276 (2d Dep't 2016), and the language "clearly and unequivocally set forth" in the agreement, Nassau Chapter Civ. Serv. Emps. Ass'n

3

v. County of Nassau, 585 N.Y.S.2d 966, 970 (N.Y. Sup. Ct. 1992), aff'd 612 N.Y.S.2d 880 (2d Dep't 1994).

In support of its argument, the Republic relies heavily on Judge Marrero's decision in Ajdler v. Province of Mendoza, No. 17-cv-1530 (VM), 2017 WL 3635122 (S.D.N.Y. Aug. 2, 2017), aff'd 768 F. App'x 78 (2d Cir. 2019).  The Plaintiff in that case brought suit in March 2017--almost 10 years after the bonds at issue matured in September 2007.  The Court nevertheless considered whether the prescription clause superseded New York's six-year statute of limitations.  The clause read:  "All claims against the Province for payment of principal of or Interest . . . on or in respect of the Bonds shall be prescribed unless made within four years from the date on which such payment first became due."  Id. at *2.  Judge Marrero concluded, without elaboration, that the clause "provides for a shorter limitations period than that provided by statute."  Id. at *8.  The Court went on to clarify, "for the sake of argument," that the claim was time-barred even under the six-year statute of limitations.  Id.

In affirming this decision, the Court of Appeals, in a non-precedential summary order, did not rely on Judge Marrero's reading of the prescription clause.  Although the Court of Appeals noted in its factual recitation that Plaintiff brought his claim "well outside the relevant four-year limitations

period," Ajdler v. Province of Mendoza, 768 F. App'x 78, 78 (2d Cir. May 23, 2019) (summary order) (citing Ajdler v. Province of Mendoza, 890 F.3d 95, 99-100 (2d Cir. 2018)), its decision did not rest on that understanding because the claim was clearly time-barred even under New York's six-year limitations period. Indeed, the dispositive question--which was certified to the New York Court of Appeals--was whether claims for interest payments continue to accrue even after claims to the principal have unquestionably been time-barred.  Id. at 79.  Given the lack of argument and analysis surrounding the provision and the fact that the construction of the provision was unnecessary to the holding either in the District Court or in the Court of Appeals, the Court accords little weight to the conclusion reached in Ajdler.

The Court's analysis of the parties' agreement begins with the text of the prescription clause:  "All claims against the Republic for any amounts due hereunder . . . shall be prescribed unless made within five years from the date on which such payment first became due, or a shorter period if provided by law."  (Security Agreement at R-14.)  As the parties agree, the subject of the provision is "claims," and the active verb is "made"--the past tense of the verb "to make."  Hence, the security holder must "make" a "claim" for amounts due within five years; if she does not, then the "claim" is prescribed.

5

The parties part ways, however, over the meaning of the word "claim" in the context of this clause.  According to the Republic, a "claim" means a lawsuit alleging breach of contract for non-payment.  (See Motion to Dismiss [dkt. no. 16] at 5 (equating a claim with filing a complaint).)  According to Plaintiffs, it means notice of a right to payment.  (Opposition to Motion to Dismiss [dkt. no. 24] at 8.)

The Court concludes that the making of a claim in the context of this provision means the assertion of a right to payment.  See Claim, Black's Law Dictionary (11th ed. 2019) ("The assertion of an existing right."); see also Claim, Merriam-Webster ("a demand for something due or believed to be due").  The word "claim" as used in this agreement does not unambiguously require the filing of a lawsuit.

This interpretation is buttressed by the agreement when read as a whole, as it ought to be.  Section 2(e), which deals with the mechanics of payment and the distribution of funds by the trustee, works in tandem with the prescription clause.  It provides that

> [a]ny monies deposited with the Trustee in respect of payments . . . on this Security remaining unclaimed for five years or any shorter prescription period provided by law after such money in respect of payments shall have become due and payable shall be repaid to the Republic upon written request without interest, and the Holder of any such Security may thereafter look only to the Republic for any payment to which such Holder may be entitled.

6

Security Agreement at R-6.  Hence, funds are deposited with the trustee for distribution to the securities holders.  Those funds remain with the trustee for five years, which coincides with the prescription period for a security holder to make a claim.  If after five years there are monies that have gone "unclaimed," those monies may be repaid to the Republic.  Once the monies are returned, the securities holder must "look only to the Republic for any payment."

The only sensible construction is to attribute to the word "claim" its ordinary, everyday meaning:  an assertion of a right to something.  It strains credulity to believe that the parties intended that the monies subject to a lawsuit must remain with the trustee while monies subject to an assertion of a right to payment would be repaid to the Republic after the five-year prescription period had run.

For all of these reasons, the Court concludes that the prescription clause does not supersede New York's six-year statute of limitations; rather, it prescribes the Republic's obligation to pay where the security holder fails to assert a right to payment within the five-year period.

On November 4, 2019, Plaintiff's counsel, Mr. Eric Grannis, emailed counsel for the Republic, Mr. Robert Giuffra, asserting that Plaintiff Romano owned "$126,000,000 in U.S. Dollar-Denominated GDP-Linked Securities (ISIN:  US040114GM64) and

7

€78,000,000 in Euro-Denominated GDP-Linked Securities (ISIN: XS0209139244)." (Exhibit A to the Declaration of Eric Grannis in Opposition to the Motion to Dismiss [dkt. no. 25-1].) Mr. Grannis referenced the cases brought by Aurelius Capital and Novoriver asserting their rights to payment with respect to the same securities and stated that Mr. Romano "wishes to preserve his rights while these litigations proceed without having to bring a suit against Argentina." Id. Mr. Grannis concluded by asking whether the Republic might be willing to enter into a tolling agreement. Id. This email was sent within five years of the accrual of the claim on December 15, 2014, and it was directed to Mr. Giuffra, who is attorney of record in this case, attorney of record for the Republic in the related actions involving these and similar securities, and has served as attorney of record for the Republic in other actions involving the assertions of right to payment against the Republic over the years. Despite two follow-up emails from Mr. Grannis, the Republic did not respond to the email, and no tolling agreement was ever entered into. (See Exhibit B to the Declaration of Eric Grannis in Opposition to the Motion to Dismiss [dkt. no. 25-2]; Exhibit C to the Declaration of Eric Grannis in Opposition to the Motion to Dismiss [dkt. no. 25-3].) The Court finds that, under the circumstances, Mr. Grannis's communications asserted a claim to payment under the securities

8

at issue in this lawsuit sufficient to satisfy the prescription clause.

The Republic's motion to dismiss is DENIED. The Clerk of the Court shall mark the motion (dkt. no. 15) as closed. Pursuant to the February 1, 2021 stipulation and order (dkt. no. 12), the parties shall confer and inform the Court no later than February 23, 2022 how they wish to proceed.

**ORDERED.**

Dated:    February 15, 2022
         New York, New York

*[signature]*
_____
LORETTA A. PRESKA
Senior United States District Judge